DAVID MICHAEL CONNER
DMCONNER@THECONNERLAWGROUP.COM
ROBERT M. KUTCHEY, III
RKUTCHEY@THECONNERLAWGROUP.COM
**THE CONNER LAW GROUP PC**
P.O. BOX 10720
SAVANNAH, GA 31412
TELEPHONE: (877) 283-2745

JOEL J. RHINER
PETER J. BEDARD
(PRO HAC VICE ADMISSION PENDING)
**STEIN RAY LLP**
222 W. ADAMS STREET, SUITE 1800
CHICAGO, ILLINOIS 60606
TELEPHONE: (312) 641-3700
JRHINER@STEINRAYLAW.COM
PBEDARD@STEINRAYLAW.COM

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| **PLANT RIVERSIDE, LLC and KESSLER CONDO DECLARANT, LLC,** ) )| |
| Plaintiffs, ) | CIVIL ACTION NO.: 4:21 CV-00235-RSB |
| ) | |
| v. ) | **Hon. R. Stan Baker** |
| ) | |
| **HUNT CONSTRUCTION GROUP, INC.,** ) )| **ANSWER AND COUNTERCLAIMS OF HUNT CONSTRUCTION** |
| Defendant. ) | **GROUP, INC.** |
| ) | |

**ANSWER AND COUNTERCLAIMS
OF HUNT CONSTRUCTION GROUP, INC.**

NOW COMES defendant HUNT CONSTRUCTION GROUP, INC. ("Hunt") by and

through its attorneys, The Conner Law Group PC (David Michael Conner, Esq., Ga. Bar No.

181845 and Robert M. Kutchey, III, Esq., Ga. Bar No. 912553) and Stein Ray LLP, and for its Answer and Counterclaims to the Complaint of plaintiffs Plant Riverside, LLC and Kessler Condo Declarant, LLC ("Plaintiffs"), admits, denies and alleges as follows:

## I.   NATURE OF THE ACTION

1.      Hunt admits that it entered into four separate contracts as part of the construction of a hotel and entertainment complex in Savannah, Georgia, located at 300, 400 and 500 West River Street ("Plant Riverside District Development"), but otherwise denies the allegations contained in Paragraph 1.  In further response to Paragraph 1, Hunt states that there are four related construction contracts that are at issue.  Those are:  (1) AIA Document A102 – 2007 between "Plant Riverside, LLC", as Owner, and "Hunt Construction", as Contractor, dated August 31, 2016 related to the "Kessler Plant Riverside – Historic Structure" (the "Historic Structure Contract" or the "Historic Building Contract"); (2) AIA Document A102 – 2007 between "Plant Riverside, LLC", as Owner, and "Hunt Construction", as Contractor, dated August of 2016 related to the "Kessler Plant Riverside – Three Muses Inn" (the "Three Muses" Contract);  (3) AIA Document A102 – 2007 between "Kessler Condo Declarant, LLC", as Owner, and "Hunt Construction", as Contractor, dated August of 2016 related to the "Kessler Plant Riverside – West Hotel" (the "West Hotel Contract"); and (4) AIA Document A102 – 2007 between "Kessler Condo Declarant, LLC", as Owner, and "Hunt Construction", as Contractor, dated August of 2016 related to the "Kessler Plant Riverside – Parking Garage" (the "Garage Contract" or the "Parking Garage Contract") (collectively referred to herein as the "Construction Contracts" or the "Four Contracts").  Each of the four Construction Contracts include the following description of a single project:

> *3.79 acres of land along the Savannah River on which is located a*
> *historic structure to be redeveloped into a four diamond hotel with*
> *related retail, restaurant and meeting space uses and a 6-level*
> *multi-use building incorporating hotel rooms and ground level*
> *entertainment meeting space to the west of the historic structure,*
> *together with three new buildings to the east of the historic structure*
> *with ground floor retail/restaurant space and hotel rooms above, an*
> *1,100 foot expansion to the Savannah Riverwalk, three (3) pavilion*
> *buildings, six (6) kiosks and other site improvements.*

The three relevant parcels of real estate where the "project" occurred are: (a) 500 West River Street, Savannah, Georgia 31401, Parcel No. 20003 01003, Parcel B-West Parcel; (b) 400 West River Street, Savannah, Georgia 31401, Parcel No. 20003 02003, Parcel C1-Historic Site; and (c) 300 West River Street, Savannah, Georgia 31401, Parcel No. 20003 02004, Parcel C2-Three Muses Site. The Parcel B-West Parcel relates to the "West Hotel Contract" and "Garage Contract". The "Owners" that are referred to in the Construction Contracts are Plant Riverside, LLC and Kessler Condo Declarant, LLC. The actual legal owner of the real estate is Plant Riverside, LLC.

2.      As set out in response to Paragraph 1, Hunt admits that it entered into four separate contracts for the single Plant Riverside District Development, but otherwise denies the allegations contained in Paragraph 2. In further response to Paragraph 2, the Plaintiffs required Hunt to enter into the four separate Construction Contracts to facilitate the Plaintiffs' financing on the Project; the Plaintiffs always intended that the work under the four contracts was to be performed as one

overall project with one project schedule and one project substantial completion date. Hunt denies the remainder of the allegations contained in Paragraph 2.

3.      Hunt denies the allegations contained in Paragraph 3.

4.      Hunt denies the allegations contained in Paragraph 4.

## II.      JURISDICTION AND VENUE

5.      Hunt lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.      Hunt lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.      Hunt admits the allegations contained in Paragraph 7.

8.      Hunt admits the allegations contained in Paragraph 8.

9.      The allegations contained in Paragraph 9 of the Complaint call for a legal conclusion to which a response is neither necessary nor required by law.  In the event a response is required, Hunt denies all such allegations.

10.     The allegations contained in Paragraph 10 of the Complaint call for a legal conclusion to which a response is neither necessary nor required by law.  In the event a response is required, Hunt denies all such allegations.

11.     The allegations contained in Paragraph 11 of the Complaint call for a legal conclusion to which a response is neither necessary nor required by law.  In the event a response is required, Hunt denies all such allegations.

### III.     THE CONTRACTS AND COMPLETION DEADLINES AT ISSUE

12.     Hunt denies the allegations in Paragraph 12. In further response, Hunt refers to and incorporates its prior responses to Paragraph 1 and Paragraph 2.

#### The Historic Building Contract

13.     Hunt denies the allegations in Paragraph 13. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the Historic Structure Contract.

14.     Hunt denies the allegations in Paragraph 14. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the Historic Structure Contract

15.     Hunt denies the allegations in Paragraph 15, except admits that it agreed to build the Historic Building Project within the time periods applicable to the project as a whole and for the price set out in the Historic Structure Contract, subject to the contract rights for adjustments and change orders. Hunt further refers the Court to the terms and conditions of the Historic Structure Contract.

#### The Three Muses Contract

16.     Hunt denies the allegations in Paragraph 16. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the Three Muses Contract.

17.     Hunt denies the allegations in Paragraph 17. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the Three Muses Contract.

18.     Hunt denies the allegations in Paragraph 18, except admits that it agreed to build the Three Muses Project within the time periods applicable to the project as a whole and for the price set out in the Three Muses Contract, subject to the contract rights for adjustments and change orders. Hunt further refers the Court to the terms and conditions of the Three Muses Contract.

## The West Hotel Contract

19.     Hunt denies the allegations in Paragraph 19. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the West Hotel Contract.

20.     Hunt denies the allegations in Paragraph 20. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the West Hotel Contract.

21.     Hunt denies the allegations in Paragraph 21, except admits that it agreed to build the West Hotel Project within the time periods applicable to the project as a whole and for the price set out in the West Hotel Contract, subject to the contract rights for adjustments and change orders. Hunt further refers the Court to the terms and conditions of the West Hotel Contract.

## The Parking Garage Contract

22.     Hunt denies the allegations in Paragraph 22. In further response, Hunt refers to and incorporates its prior response to Paragraph 1, and further refers the Court to the terms and conditions of the Garage Contract.

23.     Hunt admits the allegations contained in Paragraph 23, and further refers the Court to the terms and conditions of the Garage Contract.

24.     Hunt denies the allegations in paragraph 24, except admits that it agreed to build the Parking Garage Project within the time periods applicable to the project as a whole and for the price set out in the Garage Contract subject to the contract rights for adjustments and change orders. Hunt further refers the Court to the terms and conditions of the Garage Contract.

## IV.     HUNT'S RESPONSES AND DENIALS TO ALLEGATIONS OF "GROSS MISMANAGEMENT OF THE WORK"

25.     Paragraph 25 is not an allegation directed at Hunt and therefore no response is required.

26.     In response to the allegations contained in Paragraph 26 of the Complaint, the terms and provisions of the Four Contracts speak for themselves, and Hunt denies the allegations of Paragraph 26.

27.     In response to the allegations contained in Paragraph 27 of the Complaint, the terms and provisions of the Four Contracts speak for themselves, and Hunt denies the allegations of Paragraph 27.

28.     Hunt admits the allegations contained in Paragraph 28.

29.     Hunt admits the allegations contained in Paragraph 29.

30.     Hunt admits the allegations contained in Paragraph 30.

31.     Hunt admits the allegations contained in Paragraph 31.

32.     Hunt denies the allegations contained in Paragraph 32.

33.     Hunt denies the allegations contained in Paragraph 33.

34.     Hunt denies the allegations contained in Paragraph 34.

35.     Hunt denies the allegations contained in Paragraph 35.

36.     Hunt denies the allegations contained in Paragraph 36.

37.     Hunt denies the allegations contained in Paragraph 37.

38.     Hunt denies the allegations contained in Paragraph 38.

**A.     Hunt's Responses and Denials to Allegations of "Gross Negligence and Complete Indifference to Water Management at the West Hotel and Parking Garage"**

39.     Hunt denies the allegations contained in Paragraph 39.

40.     In response to the allegations contained in Paragraph 40 of the Complaint, the terms and provisions of the West Hotel Contract and Garage Contract speak for themselves, and Hunt denies the allegations of Paragraph 40.

41.     Hunt denies the allegations contained in Paragraph 41.

42.     Hunt denies the allegations contained in Paragraph 42.

43.     Hunt denies the allegations contained in Paragraph 43.

44.     Hunt denies the allegations contained in Paragraph 44.

45.     Hunt denies the allegations contained in Paragraph 45.

46.     Hunt denies the allegations contained in Paragraph 46.

47.     Hunt denies the allegations contained in Paragraph 47.

48.     Hunt denies the allegations contained in Paragraph 48.

49.     Hunt denies the allegations contained in Paragraph 49.

**B.  Hunt's Responses and Denials to Allegations of "Gross Failure to Manage Structural Steel Work"**

50.     Hunt denies the allegations contained in Paragraph 50.

51.     Hunt admits the allegations contained in Paragraph 51, and further refers the Court to the terms and conditions of the Historic Structure Contract.

52.     In response to the allegations contained in Paragraph 52 of the Complaint, the terms and provisions of the Historic Building Contract speaks for itself, and Hunt denies the allegations of Paragraph 52.

53.     Hunt denies the allegations contained in Paragraph 53.

54.     Hunt denies the allegations contained in Paragraph 54.

55.     Hunt denies the allegations contained in Paragraph 55.

56.     Hunt denies the allegations contained in Paragraph 56.

57.     Hunt denies the allegations contained in Paragraph 57.

**C.     Hunt's Responses and Denials to Allegations of "The Extraordinary Amount of Defective, Incomplete or Deficient Work"**

58.     Hunt denies the allegations contained in Paragraph 58.

59.     Hunt denies the allegations contained in Paragraph 59.

60.     Hunt denies the allegations contained in Paragraph 60.

61.     Hunt denies the allegations contained in Paragraph 61.

**D.     Hunt's Responses and Denials to Allegations of "Persistent Failure to Engage Requires Number of Workers"**

62.     Hunt denies the allegations contained in Paragraph 62.

63.     Hunt denies the allegations contained in Paragraph 63.

64.     Hunt denies the allegations contained in Paragraph 64.

65.     Hunt denies the allegations contained in Paragraph 65.

66.     Hunt denies the allegations contained in Paragraph 66.

## V.     HUNT'S RESPONSE AND DENIALS TO ALLEGATIONS OF "HUNT'S INVALID LIEN FILINGS"

67.     Hunt admits it filed two claims of lien against Plaintiffs' properties, and denies the remainder of the allegations contained in Paragraph 67.[1]

68.     Hunt admits the allegations contained in Paragraph 68.

69.     Hunt admits the allegations contained in Paragraph 69.

70.     Hunt denies the allegations contained in Paragraph 70.

71.     Hunt only admits that it certified and submitted various forms required by governing law, and denies the remainder of the allegations contained in Paragraph 71.

72.     Hunt denies the allegations contained in Paragraph 72.

73.     Hunt denies the allegations contained in Paragraph 73.

74.     Hunt admits that it submitted a partial lien and claim waiver with its Payment Application No. 47 and further states that the Payment Application 47 included a duly signed general contractor's affidavit identifying claims submitted by Hunt and its subcontractors that had not been paid and which remained outstanding, and not subject to the lien and claim waiver. Hunt denies the remainder of the allegations contained in Paragraph 74.

75.     Hunt denies the allegations contained in Paragraph 75.

76.     Hunt denies the allegations contained in Paragraph 76.

---

[1] It is anticipated that Hunt will file two additional liens related to the Project. One of the additional liens will be filed related to the Garage Contract identified in response to Paragraph 1. A second additional lien will be filed related to the West Hotel Contract identified in response to Paragraph 1.

77.     Hunt admits that it submitted a partial lien and claim waiver with its Payment Application No. 47 and further states that the Payment Application No. 47 included a duly signed general contractor's affidavit identifying claims submitted by Hunt and its subcontractors that had not been paid and which remained outstanding, and not subject to the lien and claim waiver. Hunt denies the remainder of the allegations contained in Paragraph 77.

78.     Hunt denies the allegations contained in Paragraph 78.

79.     Hunt denies the allegations contained in Paragraph 79.

80.     Hunt denies the allegations contained in Paragraph 80.

81.     Hunt denies the allegations contained in Paragraph 81.

82.     Hunt denies the allegations contained in Paragraph 82.

83.     Hunt denies the allegations contained in Paragraph 83.

## VI.     HUNT'S RESPONSE AND DENIALS TO ALLEGATIONS OF COUNT ONE-DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

84.     In response to the allegations in Paragraph 84, Hunt incorporates by reference its responses contained in each of the foregoing paragraphs of this answer in Paragraphs 1-83 as if set forth below.

85.     Hunt denies the allegations contained in Paragraph 85.

86.     Paragraph 86 is not an allegation directed at Hunt and therefore no response is required. To the extent that an admission or denial is required, Hunt denies the allegations of Paragraph 86.

87.     Paragraph 87 is not an allegation directed at Hunt and therefore no response is required. To the extent that an admission or denial is required, Hunt denies the allegations of Paragraph 87.

## VII.   HUNT'S RESPONSE AND DENIALS TO ALLEGATIONS OF COUNT TWO-BREACH OF CONTRACT

88.     In response to the allegations in Paragraph 88, Hunt incorporates by reference its responses contained in each of the foregoing paragraphs of this answer in Paragraphs 1-87 as if set forth below.

89.     Hunt denies the allegations contained in Paragraph 89.

90.     Hunt denies the allegations contained in Paragraph 90.

91.     Hunt denies the allegations contained in Paragraph 91.

92.     Hunt denies the allegations contained in Paragraph 92.

## VIII.   HUNT'S RESPONSE AND DENIALS TO ALLEGATIONS OF COUNT THREE-ATTORNEYS FEES AND COSTS

93.     In response to the allegations in Paragraph 93, Hunt incorporates by reference its responses contained in each of the foregoing paragraphs of this answer in Paragraphs 1-92 as if set forth below.

94.     In response to the allegations contained in Paragraph 94 of the Complaint, the terms and provisions of the Four Contracts speak for themselves, and Hunt denies the allegations of Paragraph 94.

95.     Hunt denies the allegations contained in Paragraph 95.

96.     Paragraph 96 is not an allegation directed at Hunt and therefore no response is required. To the extent that an admission or denial is required, Hunt denies the allegations of Paragraph 96.

97-99.   [*Missing from Plaintiffs' Complaint.*]

100.    Hunt denies the allegations contained in Paragraph 100.

## GENERAL DENIAL

101.    Hunt denies all the allegations not specifically and expressly admitted herein.

## AFFIRMATIVE DEFENSES

102.    Hunt alleges and asserts the following additional defenses, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law. Hunt reserves all rights to assert any other or additional defenses that are now or may become available or appear during, or as a result of, discovery, other proceedings, or further investigation.

## FIRST AFFIRMATIVE DEFENSE

103.    Plaintiffs' Complaint fails, in whole or in part, to allege facts sufficient to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

104.    Plaintiffs breached their Contract with Hunt, and as a consequence of their breach, is prohibited from recovery in this action.

## THIRD AFFIRMATIVE DEFENSE

105.    Plaintiffs repudiated their Four Contracts with Hunt, and as a consequence of this repudiation and breach, Plaintiffs are prohibited from recovery from Hunt.

## FOURTH AFFIRMATIVE DEFENSE

106.    Plaintiffs failed to fulfill conditions precedent pursuant to their recovery under their Four Contracts with Hunt. Plaintiffs' claims are barred, in whole or in part, by their failure to submit them to mediation as required under the Four Contracts.

## FIFTH AFFIRMATIVE DEFENSE

107.    Hunt attached Exhibit B to its lien waivers, which specifically exempted certain charges from release under its lien waivers. These documents were substantially similar on every lien release pertinent to this claim and an example is attached hereto as **Hunt Exhibits 9A-9D**.

## SIXTH AFFIRMATIVE DEFENSE

108.    To the extent Plaintiffs seeks liquidated damages, to which Hunt denies they are entitled, Section 4.3 of A-102 of the Four Contracts limits their recovery.

## SEVENTH AFFIRMATIVE DEFENSE

109.    Plaintiffs' claims are barred, in whole or in part, for failure of consideration.

## EIGHTH AFFIRMATIVE DEFENSE

110.    Plaintiffs' claims are barred, in whole or in part, by various equitable doctrines, including, without limitation, the doctrines of waiver, estoppel, laches, and unclean hands.

## NINTH AFFIRMATIVE DEFENSE

111.    Plaintiffs' damages, if any, were proximately caused by their own conduct in failing to fulfill their obligations under its Contract with Hunt.

## TENTH AFFIRMATIVE DEFENSE

112.     Plaintiffs have been unjustly enriched by Hunt having performed substantial work on the Project without compensation.

## ELEVENTH AFFIRMATIVE DEFENSE

113.     Plaintiffs' recoverable damages, if any, are subject to setoff in the amounts due Hunt as a consequence of Plaintiffs' failure to compensate Hunt for work completed on the Project.

## TWELTH AFFIRMATIVE DEFENSE

114.     Plaintiffs' claims are barred or subject to reduction to the extent that Plaintiff has not mitigated its damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

115.     To the extent that Plaintiffs attempt to rely upon any alleged oral agreement, such claims are barred by the parol evidence rule.  Moreover, any such claims may also be barred by the statute of frauds.

## FOURTEENTH AFFIRMATIVE DEFENSE

116.      The claims in the Complaint are barred or subject to reduction under the principles of setoff.

## FIFTEENTH AFFIRMATIVE DEFENSE

117.     The claims in the complaint are barred or subject to reduction under the principles of recoupment.

## SIXTEENTH AFFIRMATIVE DEFENSE

118.     The Plaintiffs alleged damages, if any, were caused or are attributable to the actions or omissions of third parties for whom Hunt was not, and is not, responsible.

## COUNTERCLAIMS

## I.      THE PARTIES

1.      Defendant/counter-plaintiff Hunt Construction Group, Inc. ("Hunt") is an Indiana Corporation, registered to do business in the State of Georgia. Hunt is a general contractor, experienced in the construction of large complex projects.

2.      On information and belief, plaintiffs/counter-defendants Plant Riverside, LLC, and Kessler Condo Declarant, LLC (collectively "Owners") are Delaware limited liability companies with principal places of business in Florida, and the Owners of the Project, as further defined below.

3.      These Counterclaims arise out of the construction of a hotel and entertainment complex in Savannah, Georgia, known as the Plant Riverside District Project (the "Project"), consisting of the Historic Power Plant, the Three Muses Inn, the West Hotel, and a Parking Garage.

4.      Hunt seeks compensation from the Owners for additional general conditions, acceleration, staffing and overhead costs that Hunt incurred on the Project due to delays and other impacts caused by the Owners during the performance of Hunt's work on the Project and due to the Owners' failure to provide accurate information regarding the project site's existing and underground conditions. Hunt also seeks reimbursement for additional costs paid to Hunt's subcontractors for delays, inefficiencies, and acceleration resulting from the Owners' delays. Finally, Hunt seeks recovery of costs incurred for additional work performed at the direction of the Owners.

## II.  JURISDICTION AND VENUE

5.     This Court has jurisdiction over these Counterclaims under 28 U.S.C. § 1367(a) as the facts of these Counterclaims are so related to the claims in Plaintiffs' Complaint that they form part of the same case or controversy. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial portion of the events of the Complaint and Counterclaims occurred within this District.

6.     This Court has jurisdiction over Hunt's mechanic's lien foreclosure claim, as this Court has ancillary jurisdiction to resolve a mechanic's lien foreclosure claim when it and the other claims arose out of the same operative facts.

## III.  FACTUAL BACKGROUND

### A.  The Contract

7.     On August 31, 2016, Hunt entered into four guaranteed maximum price ("GMP") contracts ("Four Contracts" collectively the "Contract") with the Owners to construct the Project. Although delineated into four separate contracts, the Four Contracts contained largely identical terms and conditions.

8.     The Four Contracts constituting the Contract totaled $155.3 million, as follows: $50,091,206 for the Historic Structure (attached hereto as **Hunt Exhibit 1**); $46,151,734 for the Three Muses Inn (attached hereto as **Hunt Exhibit 2**); $35,627,060 for the West Hotel (attached hereto as **Hunt Exhibit 3**); and, $23,430,000 for the Parking Garage (attached hereto as **Hunt Exhibit 4**).

9.     The Owners required Hunt to enter into four separate contracts solely to facilitate financing on the Project as memorialized in Section 15.12 of the respective Four Contracts: "the

[Owner] has elected to proceed with the Master Project in these four separate agreements and under four separate construction contracts so as to facilitate the financing of the Master Project."

10.    The Four Contracts and exhibits thereto memorialized the Parties' agreement that the work on the Project was to be performed as one overall Project, with one project schedule and one substantial completion date ("Master Project Schedule").

11.    The Four Contracts contain largely identical terms and conditions pertinent to this dispute. For example, Section 8.31(a) of the Four Contracts' General Conditions, defines the events of delay for which Hunt is entitled to a time extension and/or payment of its increased costs:

> *§ 8.3.1 Contractor will be entitled to an extension of Contract Time and/or an increase to the Contract Sum, under one or more of the following circumstances:*
>
> *(i)     an act or omission by Owner, its designated representative or any party under the control of Owner (including, but not limited to the Architect and any separate contractors), other than the Contractor, that delays the progress of the Work;*
>
> *(ii)    Owner approves a Change Order in writing containing an express extension of the Contract Time or increase in the Contract Sum;*
>
> *(iii)   labor disputes (including disputes affecting transportation) directly affecting the progress of the Work; provided that Contractor has used its best skill and judgment to prevent the same;*
>
> *(iv)    adverse and abnormal weather conditions affect the progress of the Work, but only if Contractor notifies Owner of such adverse weather conditions in accordance with Section 8.3.1(b);*

(v)     *a court or governmental agency having jurisdiction over the Work causes the progress  of the Work to be delayed by a court order, change in existing law or interpretation thereof, or new law, provided that such action is not based on Contractor's or Subcontractors' violation of any law or any government regulation, which was in effect at the time of execution of the Agreement, or upon other default by Contractor or its Subcontractors;*

(vi)    *an act of God, or a fire; or*

(vii)   *unknown or unsuitable soil conditions materially differing from those reasonably anticipated by the contractor or any hazardous, toxic or harmful materials which are encountered and materially affect the progress of the Work. Contractor will keep Owner apprised of potential delays as they occur during weekly Project coordination meetings.*

12.     Section 3.7.4 of the Four Contracts' General Conditions provides that Hunt is entitled to a time extension and additional costs incurred as a result of concealed or unknown conditions that differed materially from those indicated in the Contract:

*§3.7.4 Concealed or Unknown Conditions. If the Contractor encounters conditions at the site that are(1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are*

*disturbed and in no event later than 21 days after first observance of the conditions.*
*The Architect will promptly investigate such conditions and, if the Architect*
*determines that they differ materially and cause an increase or decrease in the*
*Contractor's cost of, or time required for, performance of any part of the Work, will*
*recommend an equitable adjustment in the Contract Sum or Contract Time, or both.*
*In such event, the Contract Sum and Contract Time shall be equitably adjusted. If*
*the Architect determines that the conditions at the site are not materially different*
*from those indicated in the Contract Documents and that no change in the terms of*
*the Contract is justified, the Architect shall promptly notify the Owner and*
*Contractor in writing, stating the reasons. If either party disputes the Architect's*
*determination or recommendation, that party may proceed as provided in Article*
*15.*

13.     The Contract also provides that Hunt is entitled to payment of overhead and profit as well as increased contractor's fee for changes to Hunt's scope of work.

**B.      The Project**

14.     The Project is a complex project, involving retrofitting, renovation, and expansion of historic structures, construction and incorporation of new structures, construction of substantial below grade foundations and tunneling systems, and construction of a slurry wall along the Savannah River as part the supporting structure necessary for the construction of the West Hotel and Parking Garage.

15.     The construction of the West Hotel and Parking Garage was a particularly complex undertaking that required "dewatering" of ground water seepage, rainfall and overflow from the

Savannah River, in order to construct the walls, foundations, and other structural systems for the West Hotel and Parking Garage.  The construction of the structural systems for the West Hotel and Parking Garage required substantial excavation of soils, bracing, setting of concrete forms, and installation of voluminous cubic meters of concrete.

16.    The Owners provided Hunt with information, including but not limited to, geotechnical reports, environmental reports, and other design information which Hunt relied on for planning the dewatering systems to be used on the Project, identification of existing underground conditions and structures, and for planning the excavations for construction of the slurry wall and other structural systems.

17.    The construction of the West Hotel and Parking Garage was important to the construction of the overall Project as the Owners' design for the Project provided that vital services and critical systems, such as food delivery, chilled water, and power systems, ran through below-grade areas of the West Hotel and Parking Garage, which the Owners designed to serve as the hub for providing these services to the Historic Power Plant and Three Muses Inn.

18.    Because of the significance of the vital services and critical systems to the entire Project, the Parties agreed that the Master Project Schedule's "critical path" for completion of the Project was through construction of the West Hotel and Parking Garage.  As a result, substantial completion of the Project required the completion of the West Hotel and Parking Garage.

## C.    Delays to Hunt's construction of the Project

19.    Work on the Project was scheduled to commence in September 2016 pursuant to the Contracts and Master Project Schedule.  The Owners, however, delayed commencement of the work until late November 2016.

20.     After work on the Project commenced, Hunt experienced numerous delays on the Project not attributable to Hunt, including but not limited to, delays caused by:

   a.   Unforeseen underground obstructions in the Parking Garage and West Hotel;

   b.   Riverwalk bulkhead wall failure;

   c.   Underground obstructions and unforeseen conditions during construction of the slurry wall;

   d.   Excessive dewatering;

   e.   Cracks and voids in the slurry wall caused by removal of unforeseen and unknown obstructions which resulted in water penetration;

   f.   Delays to completion of the West Hotel and Parking Garage slab-on-grade work due to the Owners' geotechnical engineer's discovery of unsuitable soils which resulted in the Owners' directive that Hunt remove unsuitable soils and install replacement materials; and

   g.   Covid-19 which led to reduced manpower and productivity impacts.

21.     The delays resulting from the Riverwalk bulkhead wall failure listed above began in early June 2017.  Hunt encountered cracks in the Riverwalk cap beam and transfer cap.  The movement of the cap beam caused the guide walls for the Parking Garage and West Hotel slurry wall to crack and become displaced.  Due to the guide wall movement, the slurry wall guide walls had to be removed and replaced for most of the north slurry wall along the Riverwalk bulkhead wall.  The Riverwalk bulkhead wall failure prevented installation of the slurry wall for almost 6 months.

22.     Shortly after Hunt was able to recommence installation of the slurry wall, Hunt encountered underground obstructions and unforeseen conditions during the slurry wall installation, excavation and pile placement work.

23.     By October 5, 2018, the Owners recognized some of the delays experienced by Hunt and approved compensable time extensions totaling 406 calendar days and a non-compensable time extension of 7 calendar days, for the Project.  Specifically, the Owner provided Hunt with compensable time extensions for the delays resulting primarily from the Riverwalk bulkhead failure and delays due to underground obstructions and unforeseen conditions during the slurry wall installation, excavation and pile placement work.

24.     As a result, by early October 2018, the Owners' approved time extensions extended the Master Project Schedule's substantial completion date to January 6, 2020.  In addition, the Parties recognized the Project was delayed by others (and not attributable to Hunt) for a total of 47 calendar days, resulting in a further extension of the Master Project Schedule's substantial completion date to February 22, 2020.

25.     Hunt continued to experience delays resulting from undisclosed underground obstructions. For example, Hunt encountered unforeseen wood obstructions that Hunt had to remove during the excavation for the second level of bracing.

26.     In addition, during the excavation and placement of the second layer braces, Hunt encountered interferences from the placement of the slurry wall.  The as-built slurry wall was different than the planned installation due to the removal of unforeseen obstruction during the slurry wall installation.  The unknown underground obstructions resulted in "voids" in the slurry wall which required the addition of slurry mix to fill the voids.  The slurry mix that was pumped

into the voids led to "blow-outs" in the slurry wall, which Hunt had to "grind out" in order to install bracing necessary for construction of foundations and other structural systems.

27.     After the slurry wall was constructed, Hunt also experienced significant delays in dewatering the Project site for construction of the West Hotel and Parking Garage. Dewatering of the area of the Project bounded by the slurry wall was necessary for construction of the pilings, foundations and structural systems for the West Hotel and Parking Garage.  Hunt implemented a plan for the dewatering efforts and retained equipment and experienced subcontractors to execute the dewatering activities.

28.     However, shortly after Hunt initiated its dewatering efforts, testing of the water removed from the Project site revealed high levels of contaminants.  The City of Savannah directed that Hunt cease all dewatering while it investigated the contaminant levels in the water.  Hunt was unable to perform any dewatering during this shutdown.  Ultimately, the City of Savannah directed that water removed from the Project site had to go through a filtration process before the water could be returned to the City's sanitary sewer system, and this directive severely limited Hunt's ability to discharge water from the Project site.

29.     As a result of the City of Savannah's directive, Hunt had to procure filtration tanks, additional pumps, and other equipment necessary to process the water removed from the Project site.  The "filtration process" significantly slowed down the daily rate of water removal as compared to Hunt's planned dewatering approach, resulting in a significantly longer overall dewatering process.

30.     The delays in dewatering the Project site led to delays in Hunt's performance of underground work necessary for the pilings, foundations and other structural systems integral to

the construction of the West Hotel and Parking Garage, resulting in significant delays to the Project's critical path.

31.     Hunt's progress of work on the Project was further delayed and impacted by adverse and abnormal weather conditions, including Hurricanes Dorian, Florence and Isaias, as well as other inclement weather such as high winds, heavy rain events, and lightening, above the National Oceanic and Atmospheric Administration ("NOAA") averages.   In particular, the hurricanes required Hunt to shutdown work activities, implement measures to safely secure the Project site, and protect existing work, materials and equipment, well in advance of the storms. After the storms passed, Hunt incurred costs for clean-up.

32.     The delays and impacts incurred by Hunt were also due to the Owners' failure to provide complete and accurate information regarding the Project site's existing and underground conditions, or otherwise due to reasons for which Hunt is entitled to a time extension and additional compensation under the Contract.

33.     Hunt implemented measures and incurred additional costs to mitigate the delays, including, but not limited to the following:

    a.  Hunt increased its staffing on the Project and incurred additional costs for its staffing due to the Project's in order to address the unforeseen site conditions and obstructions, additional dewatering efforts, and extended duration;

    b.  Hunt incurred additional general conditions costs due to the unforeseen site conditions and obstructions, additional dewatering efforts, and extended duration of the Project;

    c.   Hunt incurred significant costs for additional equipment and other resources such as additional crane rentals; and

    d.   Hunt incurred significant additional costs for accelerating its work and performing its work out of sequence at the request of the Owners.

34.    As a result of these delays, the Project's substantial completion date was delayed in excess of 850 calendar days. Pursuant to the Contract, Hunt is entitled to a time extension and additional compensation due to the delays described herein.

35.    While the Owners provided Hunt compensable time extensions for some of the delays incurred by Hunt as described above, the Owners refused to provide Hunt with additional compensable time extensions Hunt is entitled to under Contract as a result of the delays that Hunt experienced on the Project.

36.    In addition, as a result of the delays discussed herein, several of Hunt's subcontractors submitted claims for additional payment to Hunt. Hunt has paid several of the subcontractors' claims and seeks reimbursement of such payments from the Owners. Other Hunt subcontractors have asserted claims for additional costs resulting from the delays described herein, which Hunt passes through to the Owners for compensation.

37.    Due to the Owners' breach of the Contract and failure to pay Hunt, Hunt has been sued in various state court actions by various subcontractors seeking payment under various subcontracts.

38.    In addition, during the course of the Project, the Owners issued numerous change orders, in excess of $42 million, directing Hunt to perform additional work on the Project, thereby increasing Hunt's overall scope of work on the Project.  Due to the amount and scale of the work

added by the Owners through the change orders, Hunt had to increase its staff to handle the administration of the additional work.  As a result, Hunt incurred additional costs for increases in staffing and general requirements, additional crane usage, unplanned claim resolution work, and contingency resulting from the Owners' issuance of change orders.

39.     The Owners also directed Hunt to accelerate non-critical path work on the Project in order for the Owners to obtain and maintain state tax-credits, as well as complete other work to allow federal tax-credits to be granted to the Owners prior to year-end of 2019.  Hunt incurred costs for acceleration and costs for temporary provisions as a result of the Owners' direction to accelerate.

40.     Finally, Hunt has submitted change order requests for performance of additional scope of work performed at the request of the Owners, including, but not limited to, additional equipment and material costs for the additional dewatering efforts resulting from the City of Savannah's direction that contaminated water removed from the Project site had to be processed through a filtration system; additional costs for preparation of Hurricane Isaias; and additional costs for removal of fill. The Owners have failed to approve the change order requests and compensate Hunt for the costs incurred for performing the additional scope.

## IV.     COUNT I- BREACH OF CONTRACT

41.     Hunt hereby incorporates paragraphs 1 through 40 above in Count I as though fully restated herein.

42.     The Owners have breached the Contract by failing to provide Hunt with a time extension and payment of Hunt's additional costs to which Hunt is entitled to under the Contract,

by failing and refusing to compensate Hunt for the claims of Hunt's subcontractors resulting from the delays, and by failing to compensate Hunt for its performance of out-of-scope work.

43.     Hunt has fully performed under the Contract and has provided notice of delays, entitling Hunt to adjustment as to time for performance, to the Owners.

44.     As a result of Owners' breach and default under the Contract, Hunt is entitled to an award of all costs and damages incurred by Hunt as a result thereof, in an amount in excess of $36,000,000, to be proved at trial, and to recover its costs and attorneys' fees pursuant to Section 15.9 of the Contract.

## V.     COUNT II- MECHANIC'S LIEN FORECLOSURE (Historic Structure Lien)[2]

45.     Hunt hereby incorporates paragraphs 1 through 44 above in Count II as though fully restated herein.

46.     After all credits and offsets, Hunt is owed a principal sum of at least $9,037,052.00, the entirety of which is the reasonable value of materials, labor, and related services for the improvement provided by Hunt for the Historic Structure, defined herein.

47.     On April 12, 2021, Hunt filed a Notice of Claim of Materialman's Lien, which was recorded by the Chatham County Clerk's Office that day at Deed Book 828, Pages 291-297 ("Historic Structure Lien").

48.     The Historic Structure Lien was filed "for satisfaction of a claim under that AIA document called AIA Document A102 – 2007 between Plant Riverside, LLC", who was reflected

---

[2] Given that Hunt intends to file additional claims of lien, once its work under the Garage Contract and West Hotel Contract is complete, Hunt will seek permission to add lien foreclosure claims related thereto.

as the "Owner" therein and "Hunt Construction", who is reflected as the "Contractor," dated August 31, 2016.

49.     The lien was attached to the "Kessler Plant Riverside – Historic Structure" (the "Historic Structure Contract")" in the amount of $12,221,566.00. Since the filing of the lien, certain of the amounts claimed due have been paid by the Owners or otherwise resolved.

50.     The claim became due on February 12, 2021. A copy of the Historic Structure Lien is attached hereto as **Hunt Exhibit 5**.

51.     On April 13, 2021 Hunt supplied a copy of the Historic Structure Contract Lien to Owners pursuant to GA. CODE ANN. § 44-14-361.1(a)(3) via certified mail. A copy of that letter is attached hereto as **Hunt Exhibit 6.**

52.     Pursuant to GA. CODE ANN. § 44-14-361.1, Hunt performed all acts and satisfied all conditions to secure a valid mechanic's lien claims against the property described more fully in the Historic Structure Lien ("Historic Structure").

53.     Hunt's lien claims against the Project improvements are valid and attached against the interests of the Historic Structure's Owners.

54.     The materials, labor and related services furnished by Hunt to the Project were furnished according to the provisions of the Contract, as altered from time to time by Owners.

55.     Hunt's labor and materials were incorporated into the subject real property, constructed on said real property, and thus improved the Project.

56.     Hunt has performed all conditions precedent to perfect a good and proper mechanic's lien claim against the Historic Structure.

57.     Accordingly, Hunt is entitled to the principal sum of $9,037,052.00 as well as its attorneys' fees and costs pursuant to GA. CODE ANN. § 13-1-11 and § 15.9 of the Contract.

**VI.     COUNT III- MECHANIC'S LIEN FORECLOSURE (Three Muses Lien)**

58.     Hunt hereby incorporates paragraphs 1 through 57 above in Count III as though fully restated herein.

59.     After all credits and offsets, Hunt is owed a principal sum of at least $6,137,147.00, the entirety of which is the reasonable value of materials, labor, and related services for the improvement provided by Hunt for the Three Muses Inn, defined herein.

60.     On April 12, 2021, Hunt filed a Notice of Claim of Materialman's Lien, which was recorded by the Chatham County Clerk's Office on April 12, 2021, at Deed Book 828, Pages 284-290 ("Three Muses Lien").

61.     The Three Muses Lien was filed for satisfaction of a claim under that AIA document called AIA Document A102 – 2007 between "Plant Riverside, LLC", as "Owner" therein, and "Hunt Construction", as Contractor therein, dated August of 2016.

62.     The lien was attached to the "Kessler Plant Riverside – Three Muses Inn" (the "Three Muses" Contract") in the amount of $8,328,908.00. Since the filing of the lien, certain of the amounts claimed due have been paid by the Owners or otherwise resolved.

63.     The claim became due on January 22, 2021. A copy of the Three Muses Lien is attached hereto as **Hunt Exhibit 7**.

64.     On April 13, 2021, Hunt supplied a copy of the Three Muses Lien to Owners pursuant to GA. CODE ANN. § 44-14-361.1(a)(3) via certified mail. A copy of that letter is attached hereto as **Hunt Exhibit 8.**

65.     Pursuant to GA. CODE ANN. § 44-14-361.1, Hunt performed all acts and satisfied all conditions to secure a valid mechanic's lien claims against the properties described more fully in the Three Muses Lien ("Three Muses Inn").

66.     Hunt's lien claims against the Project improvements are valid and attached against the interests of the Three Muses Inn's Owners.

67.     The materials, labor and related services furnished by Hunt to the Project were furnished according to the provisions of the Contract, as altered from time to time by Owners.

68.     Hunt's labor and materials were incorporated into the subject real property, constructed on said real property, and thus improved the Project.

69.     Hunt has performed all conditions precedent to perfect a good and proper mechanic's lien claim against the Three Muses Inn.

70.     Accordingly, Hunt is entitled to the principal sum of $6,137,147.00 as well as its attorneys' fees and costs pursuant to GA. CODE ANN. § 13-1-11 and § 15.9 of the Contract.

## VII.     COUNT IV- UNJUST ENRICHMENT (in the alternative)

71.     Hunt hereby incorporates paragraphs 1 through 70 above in Count IV as though fully restated herein.

72.     The labor, materials, equipment, services and other items provided by Hunt to Owners constructing the Project unjustly enriched Owners as the owners of the Property.

73.     Owners have been unjustly enriched at the expense of Hunt to the extent of the reasonable value of the labor, materials, equipment, services and other items furnished to the Project for which Hunt has not been compensated.

74.     The reasonable value of the labor, materials, equipment, services and other items furnished to the Project after deducting all just offsets and credits is in an amount in excess of $36,000,000, to be proved at trial, together with accruing interest on past due amounts at the highest legal rate on the remaining unpaid balance until paid.

## VIII.   COUNT V- NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

75.     Hunt hereby incorporates paragraphs 1 through 74 above in Count V as though fully restated herein.

76.     As more fully set out in the preceding paragraphs of the Counterclaims, the Owners provided Hunt with information, including but not limited to, geotechnical reports, environmental reports, and other design information which Hunt relied on for planning the dewatering systems to be used on the Project, identification of existing underground conditions and structures, and for planning the excavations for construction of the slurry wall and other structural systems.

77.     Hunt, however, incurred subsurface or otherwise concealed physical conditions that differed materially from those indicated in the Contract Documents and materials or representations provided by the Owners.

78.     Similarly, as also previously stated, Hunt encountered physical conditions of an unusual nature, that differed materially from those indicated in the Contract Documents and materials or representations provided by the Owners and from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents.

79.     Among others, those conditions included the following:

a.     Unforeseen underground obstructions in the Parking Garage and West Hotel;

b.     underground obstructions and unforeseen conditions during construction of the slurry wall;

c.     excessive dewatering that involved high levels of contaminants in the water removed;

d.     unforeseen and unknown obstructions which resulted in water penetration in portions of the Project; and

e.     unsuitable soils which resulted in the Owners' directive that Hunt remove unsuitable soils and install replacement materials.

80.     The delays and construction-related impacts incurred by Hunt were due to the Owners' failure to provide complete and accurate information regarding the Project site's existing and underground conditions.

81.     "The essential elements of negligent misrepresentation are '(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'" Marquis Towers, Inc. v. Highland Grp., 265 Ga. App. 343, 346, 593 S.E.2d 903, 906 (2004), quoting Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 267 Ga. 424, 426(1), 479 S.E.2d 727 (1997).

82.     The Owners negligently misrepresented material facts when they contracted with Hunt for the Project.  As stated, the geotechnical reports, environmental reports, and other design information supplied by the Owners and upon which Hunt relied on for planning the dewatering

systems to be used on the Project, identification of existing underground conditions and structures, and for planning the excavations for construction of the slurry wall and other structural systems were inaccurate or deficient.

83.     The Owners knew, and, in fact, expected that Hunt would rely upon the representations and materials provided by them to Hunt.

84.     Hunt justifiably relied upon the representations made by the Owners and upon the materials provided by the Owners in both Hunt's decision to enter into the Contract and in Hunt's actual performance of the work under the Contract.

85.     As a direct and proximate result of the inaccurate and incomplete data and information provided by the Owners upon which Hunt relied, Hunt incurred damages.  In this regard, as stated, Hunt experienced the damages to its project work and project schedule that, among others, included the following:

      a.     Riverwalk bulkhead wall failure;

      b.     Cracks and voids in the slurry wall caused by removal of unforeseen and unknown obstructions which resulted in water penetration;

      c.     Unforeseen wood obstructions that Hunt had to remove during the excavation for the second level of bracing; and

      d.     Significant delays in dewatering the Project site for construction of the West Hotel and Parking Garage.

86.     Hunt also incurred monetary damages as a direct and proximate result of the inaccurate and incomplete data and information provided by the Owners upon which Hunt relied, in the forms of Hunt's implementation of measures to mitigate these conditions and incurrence of

additional costs to mitigate the delays and the problems associated with the inaccurate and incomplete data and information provided by the Owners.

87.     Hunt has also incurred monetary damages in the form of litigation defense costs in connection with the defense of various lawsuits brought by various third-party subcontractors in various state courts.

WHEREFORE, Hunt is entitled to judgment against the Owners in an amount to be determined at trial as a consequence of the Owners' negligent misrepresentation.

### IX.     COUNT VI- SETOFF AND RECOUPMENT

88.     Hunt hereby incorporates paragraphs 1 through 87 above in Count VI as though fully restated herein.

89.     As more fully set out in the preceding paragraphs of the Counterclaims, the Owners owe Hunt substantial sums of money (in excess of $36,000,000.00) under the Contract.

90.     Similarly, as also more fully set out in the preceding paragraphs of the Counterclaims, the Owners are liable to Hunt due to the Owners' failure to provide complete and accurate information regarding the Project site's existing and underground conditions.

91.     Likewise, as set out in the preceding paragraphs of the Counterclaims, the Owners have an obligation, both under the Contract and common law, to indemnify Hunt from and against the claims of subcontractors, including for Hunt's litigation defense costs.

92.     Hunt is, therefore, entitled to setoff the monetary amount of its claims against the Owners from and against any amounts that the Owners allege are owed by Hunt to the Owners.

93.     Likewise, Hunt is entitled to recoup the expenses that Hunt has incurred both as a consequence of the Owners' demands to change the project schedule and related to the Owners'

changes orders, and as a result of Hunt's own reliance upon the Owners' incomplete and inaccurate information regarding the Project site's existing and underground conditions.

94.     Moreover, Hunt is entitled to recoup the litigation defense costs that Hunt has incurred to date, and will incur in the future, in the defense of the various lawsuits commenced by various third-party subcontractors.

95.     WHEREFORE, Hunt is entitled to judgment against the Owners under the principles of setoff and recoupment in an amount to be determined at trial.

## X.     COUNT VII- INDEMNITY

96.     Hunt hereby incorporates paragraphs 1 through 95 above in Count VII as though fully restated herein.

97.     As more fully set out in the preceding paragraphs of the Counterclaims, the Owners have refused to pay sums owed to Hunt under the Contract.

98.     Certain of the sums owed to Hunt that the Owners have refused to pay include payments to subcontractors.

99.     Various subcontractors have filed various lawsuits against Hunt in various state courts as a consequence of Hunt's inability to pay such subcontractors.

100.    The Owners' refusal to pay Hunt sums that the Owners owe to Hunt has caused Hunt to incur litigation defense costs in defense of such third-party lawsuits.

101.    Under the Contract, the Owners have the obligation to indemnify Hunt from and against such litigation defense costs.

102.    Under Georgia common law, the Owners have the obligation to indemnify Hunt from and against such litigation defense costs.

103.     WHEREFORE, Hunt is entitled to be indemnified by the Owners in an amount to be determined at trial.

### XI.     COUNT VIII- ATTORNEYS' FEES AND LITIGATION COSTS

104.     Hunt hereby incorporates paragraphs 1 through 103 above in Count VIII as though fully restated herein.

105.     Each of the Four Contracts provide, in pertinent part, that: "In any litigation or other legal proceeding which may arise between Owner and Contractor, the prevailing party shall be entitled to recover its litigation or mediation costs and reasonable attorneys' fees actually incurred." [AIA A102, § 15.9].

106.     Owners are herein notified that the provisions contained in the Four Contracts relating to payment of attorney's fees and costs will be enforced; and that, to the extent that the Contract constitute indebtedness under GA. CODE ANN. § 13-1-11, Owners would be permitted, within ten (10) days from the date of service upon them of this Answer and these Counterclaims, to make payment in full of all amounts owed by Owners to Hunt under the Contract; and that, by such payment of said full claim amount within ten (10) days from the date of service upon them of this Answer and these Counterclaims, thereby avoid any liability for attorney's fees and costs under the Contract, to the extent they constitute indebtedness under GA. CODE ANN. § 13-1-11.

107.     Additionally, Owners have acted in bad faith, have been stubbornly litigious, and have caused Hunt unnecessary trouble and expense.

108.     Accordingly, Hunt is entitled to recover all expenses of litigation, including reasonable attorneys' fees, from Owners pursuant to and in accordance with GA. CODE ANN. §§ 13-1-11, 13-6-11, and other applicable provisions of Georgia law.

## PRAYER FOR RELIEF

WHEREFORE, Hunt reserving the right to amend these Counterclaims to include all items of damages not yet ascertained, prays judgment against Plaintiffs, as follows:

(a)      An award of monetary damages in an amount to be proven at trial of not less than $36,000,000;

(b)      An order of foreclosure of the Historic Structure Lien in the amount of $12,221,566.00 and Three Muses Lien in the amount of $8,328,908.00;

(c)      An award of all Hunt's costs and attorneys' fees incurred in this action;

(d)      An order dismissing Plaintiffs' claim from this action with prejudice or, in the alternative, judgment entered in Hunt's favor and against Plaintiffs;

(e)      For reasonable attorneys' fees, costs, experts' fees, and other related litigation costs; and

(f)      For such other and further relief as the law and this Court deems just and proper.


DATED THIS 13TH OF SEPTEMBER 2021.


                                        THE CONNER LAW GROUP PC
                                        By:      /s/ David Michael Conner
                                                 David Michael Conner
                                                 Ga. Bar No. 181845
                                                 Robert M. Kutchey, III
                                                 Ga. Bar No. 912553
                                                 PO Box 10720
                                                 Savannah, Georgia 31412
                                                 (877) 283- 2745
                                                 Attorneys for Defendant

                                        STEIN RAY LLP
                                        By:      /s/ Joel J. Rhiner
                                                 Joel J. Rhiner*

Peter J. Bedard. Esq.*
 222 West Adams Street, Suite 1800
 Chicago, Illinois 60606
 Attorneys for Defendant
*Pro Hac Vice Pending

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

|  |  |
|---|---|
| **PLANT RIVERSIDE, LLC and KESSLER CONDO DECLARANT, LLC,** ) ) ) ) ) Plaintiffs, ) ) v. ) ) **HUNT CONSTRUCTION GROUP, INC.,** ) Defendant. ) ) ) ) | CIVIL ACTION NO.: 4:21 CV-00235-RSB **Hon. R. Stan Baker** |

## CERTIFICATE OF SERVICE

I, the undersigned attorney and counselor at law, do hereby certify that, pursuant to F.R.C.P. Rule 5, I have caused and instructed on this day to be served a true and correct copy of the **Answer and Counterclaims of Defendant Hunt Construction Group, Inc** on counsel of record by electronic means – the CM/ECF System and electronic mail – and also by directing that a copy of same be deposited in the United States Mail, with proper postage affixed and addressed to the following:

Christopher W. Phillips
HUNTER, MACLEAN, EXLEY & DUNN
200 E. Saint Julian Street
P.O. Box 9848
Savannah, GA 31412-0048
cphillips@huntermaclean.com

James Archibald
D. Bryan Thomas
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N
Birmingham, AL 35203
jarchibald@bradley.com
dbthomas@bradley.com

Joel G. Pieper
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, N.W.
Suite 2400
Atlanta, GA 30363-1017
Joel.Pieper@wbd-us.com

Joel J. Rhiner
Peter J. Bedard
STEIN RAY LLP
222 West Adams Street, Suite 1800
Chicago, Illinois 60606
JRhiner@steinraylaw.com
PBedard@steinraylaw.com

DATED THIS 13<u>TH</u> DAY OF <u>SEPTEMBER</u>, <u>2021</u>.

                                         **THE CONNER LAW GROUP PC**

By:    <u>/s/ David Michael Conner</u>
        David Michael Conner
        dmconner@theconnerlawgroup.com
        Ga. Bar No. 181845
        Robert M. Kutchey, III
        rkutchey@theconnerlawgroup.com
        Ga. Bar No. 912553
        PO Box 10720
        Savannah, Georgia 31412
        (877) 283- 2745
        Attorneys for Defendant